UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER J.,[1] | ) | CIVIL ACTION NO. 4:23-CV-1076 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| FRANK J. BISIGNANO,[2] | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Jennifer J. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before the undersigned Magistrate Judge upon consent of the parties pursuant to 28 U.S.C. § 636(c). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that federal courts refer to plaintiffs in Social Security appeals by their first name and last initial. We adopt this recommendation.

[2] Frank J. Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. He is automatically substituted as a party to this lawsuit. *See* Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g).

administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be reversed, and this case will be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND AND PROCEDURAL HISTORY

On December 26, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 71; Doc. 10-2, p. 72). Plaintiff alleges her disability began on the date she filed this application. *Id.* She was forty-two years old, and alleged she suffered from the following conditions: anxiety, depression, arthritis, pes anserinus bursitis of her left and right knees, attention deficit hyperactivity disorder, migraines, cervical spinal stenosis, degeneration of the cervical intervertebral disc, and cervical disc herniation. (Admin. Tr. 371; Doc. 10-6, p. 8). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and get along with others. (Admin. Tr. 398; Doc. 10-6, p. 34). She also alleges that her conditions make it impossible to maintain regular attendance in the workplace. Plaintiff is a high school graduate. (Admin. Tr. 372; Doc. 10-6, p. 8). Before the onset of her disabling impairments, Plaintiff held a composite job as a printing department supervisor and instant

printshop operator, she also worked as a policy holder information clerk, receptionist, and scheduler. (Admin. Tr. 85; Doc. 10-2, p. 86). Plaintiff alleges she was terminated from her lost job at the end of her probationary period in December 2019 because she was absent from work too frequently due to her impairments. (Admin. Tr. 372; Doc. 10-6, p. 8).

On April 29, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 71; Doc. 10-2, p. 71). On January 25, 2021, her application was denied on reconsideration. *Id.* On February 19, 2021, Plaintiff requested an administrative hearing. *Id.*

On November 17, 2021, Plaintiff, assisted by her counsel, appeared, and testified during a telephone hearing before Administrative Law Judge Patrick S. Cutter (the "ALJ"). (Admin. Tr. 71, 86; Doc. 10-2, p. 72, 87). At the conclusion of that hearing, the ALJ requested that Plaintiff undergo consultative examinations by an internist and psychologist. (Admin. Tr. 111; Doc. 10-2, p. 112). On July 6, 2022, a second administrative hearing was held. On October 5, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 86; Doc. 10-2, p. 87). On October 14, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's

decision. (Admin. Tr. 339; Doc. 10-4, p. 165). Plaintiff also submitted additional evidence to the Appeals Council. (Admin. Tr. 7-62; Doc. 10-2, pp. 8-63).

On May 4, 2023, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3; Doc. 10-2, pp. 2-4). Regarding the additional evidence, the Appeals Council wrote:

> You submitted a one-page medical source statement and six pages of treatment records from Jessica Olewind, PT dated June 30, 2022; a two-page third-party statement from Jane Mott and a one-page third party statement from [Philip J.], both undated; and 44 pages of payment and employment information from Geisinger Health Plan dated September 22, 2014 to March 8, 2019. This evidence is not new because it was previously submitted to the Administrative Law Judge and evaluated under 20 CFR 404.935. We did not exhibit this evidence.

(Admin. Tr. 2; Doc. 10-2, p. 3).

On June 28, 2023, Plaintiff filed a complaint in this Court. (Doc. 1). On August 25, 2023, the Commissioner filed an answer. (Doc. 9). In his answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 9, ¶ 8). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 13), the Commissioner's Brief (Doc. 17), and Plaintiff's Reply (Doc. 18) have been filed.  This matter is ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.    SUBSTANTIAL EVIDENCE REVIEW–THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see*, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated*

---

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

*Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular

---

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

"magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[16] 20 C.F.R. § 404.1520(a).

[17] 20 C.F.R. § 404.1520(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[19] 20 C.F.R. § 404.1545(a)(2).

him or her from engaging in any of his or her past relevant work.[20]  Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[21]

## IV.  DISCUSSION

Plaintiff asserts that substantial evidence does not support the ALJ's decision

for two reasons:

(1)    The ALJ failed to adequately address Plaintiff's migraine headaches; and

(2)    The ALJ failed to adequately address the impact Plaintiff's radiculopathy and tremors had on her ability to handle and finger.

We will begin our analysis by summarizing the ALJ's decision. Then will

address Plaintiff's first argument. We have concluded that this argument is a basis

for remand because the ALJ did not articulate why he rejected Plaintiff's migraine

symptoms. Therefore, we will not address Plaintiff's second argument. To the extent

any further error occurred, it may be addressed on remand.

---

[20]42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.
[21] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his October 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2023. (Admin. Tr. 74; Doc. 10-2, p. 75). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 26, 2019 (Plaintiff's alleged onset date) and October 5, 2022 (the date the ALJ decision was issued) ("the relevant period"). *Id.*

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, osteoarthritis, bursitis of the bilateral knees, fibromyalgia, obesity, anxiety, depression, personality disorder, and attention deficit hyperactivity disorder. *Id.* The ALJ found that the following impairments were medically determinable, but non-severe: migraine headaches, diabetes, polycystic ovary syndrome, tremors, and temporomandibular joint dysfunction. (Admin. Tr. 64-75; Doc. 10-2, pp. 75-76).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 75; Doc. 10-2, p. 76).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except with:

> frequent standing, occasional walking, and never climbing ladders, ropes, or scaffolds or work at unprotected heights. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, or use foot controls bilaterally but can never overhead reach bilaterally. With the right upper extremity, she can occasionally feel and can frequently reach, handle, finger, push, or pull. With the left upper extremity, she can frequently reach, handle, finger, feel, push, or pull. She can tolerate occasional exposure to temperature extremes, humidity, wetness, vibration, or contact with moving mechanical parts. She can maintain concentration, persistence, or pace for two-hour segments sufficient to perform two- to three-step tasks or instructions and can perform frequent superficial interaction with coworkers, supervisors, or public. She can perform work that requires or involves no more than frequent changes in work situations in a routine work setting.

(Admin. Tr. 78; Doc. 10-2, p. 79).

At step four, the ALJ found that, during the relevant period, Plaintiff could not perform any of her past relevant work. (Admin. Tr. 84; Doc. 10-2, p. 85).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could perform other work that existed in the national economy. (Admin. Tr. 85-86; Doc. 10-2, pp. 86-87). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's

administrative hearing and cited the following three (3) representative occupations: photocopy machine operator, DOT #207.685-014 with 49,000 jobs nationally; collator operator, DOT #208.685-010 with 104,000 jobs nationally; and electrode cleaner, DOT #729.687-014 with 429,000 jobs nationally. (Admin. Tr. 86; Doc. 10-2, p. 87).

### B.    THE ALJ DID NOT ARTICULATE WHY HE REJECTED PLAINTIFF'S MIGRAINE SYMPTOMS

Plaintiff argues that, when fashioning an RFC assessment, the ALJ is required to consider the combined effect of all her medically determinable impairments, whether severe or not severe. (Doc. 13, p. 7). He is also obligated to explain the basis for his findings. Plaintiff argues that the ALJ "failed to explain his reasons for discounting the testimony and medical evidence that [Plaintiff] had migraine headaches that would likely result in her being absent more than one or two days per month." (Doc. 13, p. 12).

In response the Commissioner argues that the ALJ "explained his rationale behind finding Plaintiff's migraines non-severe at step two and properly considered them in conjunction with her other impairments in the RFC findings, and his conclusions are supported by substantial evidence." (Doc. 17, p. 19).

On a fundamental level, Plaintiff argues that the ALJ did not adequately articulate his evaluation of the testimony she gave about the intensity, persistence

and limiting effects of her migraine headaches. In the same fashion that medical opinion evidence is evaluated, the Social Security Regulations and Rulings provide a process under which a claimant's statements are to be considered.[22] The first step of this two-step process requires the ALJ to consider whether a medically determinable impairment causes the symptom at issue.[23] If this inquiry is answered in the affirmative, the ALJ must determine the extent to which the symptom limits the claimant's capacity to work by considering the intensity and persistence of the symptom.[24] To assist in the evaluation of the second step, the Social Security regulations identify seven factors to consider which may be relevant, including: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions.[25]

---

[22] *See* 20 C.F.R. § 404.1529 and SSR 16-3p, 2017 WL 5180304.
[23] *See* 20 C.F.R. § 404.1529 and SSR 16-3p, 2017 WL 5180304.
[24] *See* 20 C.F.R. § 404.1529 and SSR 16-3p, 2017 WL 5180304
[25] 20 C.F.R. § 404.1529.

In doing so, the ALJ must consider whether the claimant's statements concerning the relevant factors, and their symptoms and limitations, are consistent with the objective medical evidence and other evidence of record. Statements that are consistent with the objective medical evidence and other evidence are given more weight than statements that are inconsistent with the objective medical evidence and other evidence.[26] The ALJ may also compare statements the claimant made in connection with her application, with any existing statement she made under other circumstances.[27]

> SSR 16-3p, and the caselaw in the Third Circuit are clear that,

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.[28]

---

[26] SSR 16-3p, 2017 WL 5180304, at *8.

[27] *Id.*

[28] SSR 16-3p, 2017 WL 5180304, at *11; 20 C.F.R. § 404.1502(i) (defining "symptoms" as a claimant's own description of er physical or mental impairment); *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ must consider all the evidence and give

In his decision, the ALJ concluded that Plaintiff's migraine headaches caused "no more than minimally vocationally relevant limitations" because medications improved the frequency and intensity of her migraine headaches. (Admin. Tr. 74-75; Doc. 10-2, pp. 75-76). As Plaintiff points out, the ALJ did not discuss Plaintiff's migraine symptoms (i.e., her statements about her migraine headaches) anywhere in his decision. Instead, the ALJ acknowledged Plaintiff's migraines, observed that medications improved the frequency and intensity of Plaintiff's migraines, and concluded based on this observation that Plaintiff's migraines did not cause more than minimal vocationally relevant limitations. He does not specify what, if any, "minimal" limitation resulted from the migraines. Although an ALJ is not required to "supply a comprehensive explanation" for each symptom, the decision as a whole must furnish explanations adequate for this Court to exercise its review function. "[I]n most cases, a sentence or short paragraph may suffice."[29] In this particular case and for this particular limitation, however, the ALJ's explanation of why he rejected Plaintiff's migraine symptoms falls short of this benchmark.

During her July 2022 administrative hearing, the following discussion occurred:

---

some reason for discounting the evidence [he or she] rejects.") (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 2009)).

[29] *Cotter v. Harris*, 650 F.2d 481 (3d Cir. 1981).

[Attorney]    I wanted to ask you first about the migraine headaches. Since the end of 2019 until now, how long—how often do you get those?

[Plaintiff]    I'm down from probably two a week to probably four a month after not working.

[Attorney]    And when you get a migraine headache, whether a couple times a week of weekly, were they severe enough where it prevented you from doing your normal activities that you wanted to be doing?

[Plaintiff]    Oh, yes, sir. They had me in bed all day.

[Attorney]    Okay. So they'd last a while?

[Plaintiff]    Yes, sir.

[Attorney]    More than a couple hours?

[Plaintiff]    Yes, sir.

[Attorney]    And your doctor, in November 2019, talked about a leave of absence. Did you, in fact, take a leave of absence or did you just end your employment?

[Plaintiff]    My employment was ended and then I filed for Disability.

[Attorney]    Did you quit or did they let you go? How did it end?

[Plaintiff]    They let me go. I was on my 90-day, whatever they call it, 90-day, oh, evaluation period because I had gotten hired in July and they had a very strict absentee policy. If you weren't in the emergency room it was considered an absence, even if you had a record from your doctor and I wasn't eligible for any kind of FMLA for a year.

(Admin. Tr. 119-120; Doc. 10-2, pp. 120-121).[30] The ALJ did not acknowledge this testimonial evidence in his decision or include any attendance limitation in the RFC assessment. Therefore, he rejected this evidence without articulating why it was rejected.

The Commissioner argues substantial evidence still supports the ALJ's decision because, an impairment cannot serve as the basis for disability if its limiting effects can be reasonably controlled or if it is reasonably amenable to treatment. (Doc. 17, p. 13) (citing *Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002) (affirming an ALJ's decision that a claimant was not disabled because it was supported by the testimony of numerous doctors that he functioned reasonably well when receiving regular psychiatric treatment)). While we agree with the Commissioner as to the general principle raised, we do not agree as to its application in this case. Although the ALJ cited a reason for discounting a claimant's symptoms that is "proper" under the regulations, he failed to articulate or support his reasoning.

---

[30] Plaintiff reported to DDS staff that she lost her job because she "missed too many days within [her] probationary period," due to "chronic migraines, anxiety, depression, cervical, thoracic, and lumbar spine pain."(Admin. Tr. 372; Doc. 10-6, p. 8). Although a state agency reviewing psychologist determined that Plaintiff's mental impairments would not significantly limit her ability to maintain attendance, it does not appear that any medical source issued an opinion that addresses how Plaintiff's migraines would impact her work attendance.

The only record the ALJ cites to support his conclusion is an October 2019 treatment record, which when read in its entirety suggests that Plaintiff had not yet started taking migraine medication and was silent as to whether Plaintiff's newly prescribed medication effectively reduced the frequency or intensity of her migraines.

The records before the ALJ included objective evidence that Plaintiff was prescribed various prophylactic and abortive medications for her migraine symptoms during the relevant period, and she reported changes in the frequency of her migraine headaches over time.

Before March 2019, Plaintiff was prescribed Effexor as a prophylactic and took over-the-counter medications like Advil or Aleve to stop a migraine. (Admin. Tr. 772; Doc. 10-7, p. 231). The Effexor, however, was not effective. (Admin. Tr. 774-75; Doc. 10-7, pp. 233-34).

In March 2019, Plaintiff reported getting migraines once per week, or four times per month. (Admin. Tr. 772; Doc. 10-7, p. 231). She sought care from a neurologist, Dr. Hema Raman Gajula, who prescribed Topamax as a prophylactic and advised Plaintiff to continue using NSAIDs for acute attacks. (Admin. Tr. 774-75; Doc. 10-7, pp. 233-34). It is not clear, however, when Plaintiff started to use Topamax.

Plaintiff reported that towards the end of 2019 she was getting two migraines each week, or eight migraines per month. (Admin. Tr. 119; Doc. 10-2, p. 120). During an October 24, 2019 "new patient" physical examination, Dr. David Knorek, M.D. noted that Plaintiff had a history of migraine headaches for several years, was followed by neurology, experiences fewer than fifteen migraine attacks per month, treatment with Effexor failed, and that she either *was* started on Topamax or *was supposed to be started* on Topamax. (Admin. Tr. 611, 615; Doc. 10-7, pp. 70, 74). He also prescribed Topamax.

On November 19, 2019, Dr. Knorek noted that Plaintiff had acute and chronic headaches, was on Topamax, and was "stable without side effects." (Admin. Tr. 632; Doc. 10-7, p. 91). This treatment record does not define "stable" and does not suggest how frequent or intense Plaintiff's migraines were while she was taking Topamax. After she stopped working, in December 2019, Plaintiff alleges she experienced approximately two migraines per month. (Admin. Tr. 119; Doc. 10-2, p. 120). On May 7, 2020, Dr. Knorek once again noted that Plaintiff's headaches were stable and improved on Topamax. (Admin. Tr. 875; Doc. 10-7, p. 334).

During a hearing in November 2021, however, Plaintiff testified that she stopped taking Topamax because she and her husband were trying to have a baby. (Admin. Tr. 103; Doc. 10-2, p. 104); (Admin. Tr. 1370; Doc. 10-7, p. 829) (noting

Page 20 of 23

on May 4, 2022 that Plaintiff had been taking Topamax but stopped because she was considering fertility treatments). Thus, at some point between May 7, 2020 and November 2021, Plaintiff stopped taking Topamax, but it continued to be listed on Plaintiff's current outpatient medication list in some of her records. Plaintiff reported at that time she had approximately three migraines per month. (Admin. Tr. 98; Doc. 10-2, p. 99). In November 2021, Plaintiff indicated that she thought having a baby was now "out of the question" so she needed to see "about going back on it." (Admin. Tr. 103; Doc. 10-2, p. 104).

In January 2022, Plaintiff reported having three to four migraines per week, or twelve to sixteen migraines per month. (Admin. Tr. 1086; Doc. 10-7, p. 545). Topamax was not listed as one of her current medications. *Id.* On May 4, 2022, Plaintiff reported she was experiencing two or three migraines per month. (Admin. Tr. 1372-73; Doc. 10-7, p. 831-32). She was prescribed rizatriptan as an abortive therapy for her migraines. *Id.* The same clinician recommended Plaintiff consider nortriptyline or propranolol as a preventative therapy. *Id.* Plaintiff was prescribed nortriptyline. (Admin. Tr. 1382; Doc. 10-7, p. 841).

Plaintiff also reported that she tried sumatriptan (Imitrex) in the past for her migraines but was unsure whether it had been effective or ineffective. (Admin. Tr.

1372; Doc. 10-7, p. 831). It is not clear when or how long Plaintiff used this medication.

Regarding the limiting effects of her migraine headaches, in July 2022 Plaintiff testified that her migraines are severe enough to prevent her from doing her normal activities, last more than a couple hours, and would keep her in bed all day. (Admin. Tr. 119-120; Doc. 10-2, pp. 120-121). Plaintiff was prescribed rizatriptan and nortriptyline at the time she made these statements. Evidence in the record also suggests that Plaintiff lost her job in 2019 because she was unable to maintain regular attendance due to "chronic migraines, anxiety, depression, cervical, thoracic, and lumbar spine pain." (Admin. Tr. 372; Doc. 10-6, p. 8).

The record in this case includes evidence—Plaintiff's statements—that she would be absent from work two or more days per month due to migraine headaches. The ALJ did not discuss her statements at all, did not articulate what he concluded the frequency or intensity of Plaintiff's migraine symptoms were while she was taking medications, did not articulate what evidence supported his conclusion, and did not articulate whether or how often those symptoms would cause Plaintiff to be absent from work. In the absence of any such discussion, the Court is unable to perform its review function. If some of Plaintiff's statements are credited, her inability to maintain regular attendance could preclude Plaintiff from performing the

jobs identified by the ALJ at step five in his decision. Therefore, the ALJ's failure to explain why Plaintiff's testimony was rejected, or why this limitation was omitted from the RFC assessment, compels us to reverse the ALJ's decision and remand this matter to the Commissioner for further proceedings. While we reach this conclusion, we note that nothing in this memorandum opinion should be deemed as expressing a judgment on the ultimate outcome in this matter. This task is best left to the Commissioner.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision will be reversed, and this matter will be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Appropriate orders will be issued.

Date: May 21, 2025                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge